RICHARD L. HUNTER et al., Executors, etc., Respondents, *v.* ISAAC D. WETSELL, et al., Appellants.

Where, after the making of an oral contract for the sale of goods void under the statute of frauds, a payment is made thereon, and at the time of such payment, the essential terms of the contract are restated, this takes the case out of the operation of the statute and validates the contract.

*Hunter* v. *Wetsell* (57 N. Y. 375), distinguished.

Where a check is delivered and received as a payment, which is good when drawn and is paid on presentation, this is a payment "at the time" within the meaning of said statute (2 R. S. 136, § 3, sub. 3), and satisfies its requirements.

Where, under a contract of sale of personal property, the place of delivery was to be designated by the vendee, *held,* that a tender was not required on the part of the vendor before action to recover the purchase-price, that readiness and an offer to deliver were sufficient.

The measure of damages in such an action is the contract-price less payments made thereon.

The vendor may, but is not bound to sell the property at auction after due notice and on account of the vendee; he may abandon the property, treat it as the vendee's and sue the latter for the contract-price.

That the property was perishable does not affect the question.

In an action to recover the alleged purchase-price of a quantity of hops, wherein the statute of frauds was set up as a defense, plaintiff's evidence was to the effect, that after an oral contract of sale had been made, defendant made a payment thereon by check and at that time the contract was restated. After defendant had been called as a witness for plaintiff to prove payment of the check, he, as a witness in his own behalf, contradicted plaintiff's evidence as to payment and restatement of contract; he was asked on cross-examination, if the price of hops went down after the time of the alleged payment; this was objected to as immaterial and irrelevant and the answer received under objection and exception. *Held,* no error; that the evidence was competent as showing the interest of the witness.

While a party who has called a witness cannot impeach his general reputation for truth, he may contradict him as to any particular fact testified to, and this, although the evidence may collaterally have the effect of showing that the witness is generally unworthy of belief.

(Argued March 7, 1881; decided March 22, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon order made February 17, 1879, which affirmed a judgment in favor of plaintiffs entered upon a verdict. (Mem. of decision below, 17 Hun, 135.)

The case is reported upon a former appeal in 57 N. Y. 275.

This action was brought to recover the purchase-price of a quantity of hops alleged to have been sold by Richard Hunter, plaintiffs' testator, to defendants.

The proof on the part of plaintiffs was to the effect, that one of the defendants, who were partners, in September, 1877, looked at the hops in the hop-house and agreed to give Hunter fifty cents a pound for the lot and $10 additional, which Hunter agreed to take. It was agreed that Hunter should shovel the hops through, bale them in a few weeks when they were dry enough and notify defendants, who were then to direct where they were to be delivered; Hunter baled and weighed the hops and notified one of the defendants, who promised to come out and take them; afterward Hunter went to defendants place of business, where the contract was restated, the weight of the hops was given, to wit, 2,370 pounds, the price was figured up at fifty cents a pound and $10 added, thus show-

ing the whole purchase-price; plaintiff then received defendants' check for $200 to apply on the purchase-price, and defendants agreed to go out the next week, take the hops and pay the balance. The check was paid on presentation; defendants did not come for the hops or notify Hunter where to deliver them; he was ready and offered to deliver. At the close of plaintiffs' evidence, defendants' counsel moved for a nonsuit on the ground that the contract was void under the statute of frauds and that the check was no payment, within the meaning of that statute. The motion was denied and said counsel duly excepted.

The further material facts appear in the opinion.

*J. H. Clute* for appellants. The contract of sale was void under the statute of frauds, and was not saved by the payment of money in November subsequently. (2 R. S. 136, § 3, subd. 3; *Allen* v. *Aguina*, 5 N. Y. S. C. 380; *Sprague* v. *Blake*, 20 Wend. 61; *Brabin* v. *Hyde*, 32 N. Y. 519; *Hunter* v. *Wetsell*, 57 id. 375.) The payment must be made at the time and cannot be made at a time after making the contract. (3 Parsons on Contracts, 52, 822.) To constitute a payment as earnest or a part payment within the meaning of the statute of frauds, there must be an actual transfer or delivery of the thing or the money agreed to be given. (Chitty on Contracts, 348, 349; *Walrath* v. *Ingalls*, 64 Barb. 265, 277.) Until paid a check is merely an order upon a bank. (1 Daly, 500; *Minturn* v. *Fisher*, 4 Cal. 35; 14 La. Ann. 457; 30 N. H. 256; 3 Johns. Cas. 5; 21 Wend. 372; 25 id. 673; 6 Cow. 484.) Payment signifies delivery of money and performance of an obligation. (2 La. Ann. 24; Busbee's Law [No. Car.], 336; 69 Penn. St. 334.) The money must be actually paid; mere giving and taking it back will not suffice. (Browne on Statute of Frauds, 354; 7 Taunt. 597; 3 Duer, 426–441; 5 Hill, 200; 1 Hilton, 366; 10 Barb. 573; 12 id. 570; 30 id. 265; 33 id. 543; 44 id. 96; 49 id. 346; 32 N. Y. 519; 36 N. H. 311.) The drawing a check upon a bank is not a specific appropriation of the funds of the borrower to the pay-

ment of that particular debt in preference to the holder of checks subsequently drawn. (*Dykers* v. *The Leather Manufacturers' Bank*, 11 Paige, 612–617; *Combs* v. *Bateman*, 10 Barb. 573; *Ireland* v. *Johnson*, 18 Abb. 392; *Manice* v. *H. R. R. Co.* 3 Duer, 441.) Treated as an executory contract of sale, the title remained in the plaintiff, and the most he can recover would be the difference between the contract-price and that at the time of the breach. (*Pierson* v. *Hoag*, 47 Barb. 243; *Baker* v. *Bourcicault*, 1 Daly, 23; *Russell* v. *Nicholl*, 3 Wend. 112; *Outwater* v. *Dodge*, 7 Cow. 85; *Ward* v. *Shaw*, 9 Wend. 404; *Evans* v. *Harris*, 29 Barb. 416.) The measure of damages for refusal to receive goods which the defendants have contracted to buy is only the difference between the contract-price and the value at time of breach, and, in the absence of any evidence of difference, the damages are nominal. (Story on Sales, § 438; *Billings* v. *Vanderbeck*, 23 Barb. 546; *Dustan* v. *McAndrew*, 10 Bosw. 130; *Wilson* v. *Holden*, 16 Abb. Pr. 133; *Allen* v. *Jarvis*, 20 Conn. 38; *Chamberlain* v. *Farr*, 28 Vt. 265.) A tender of the goods is an absolutely indispensable preliminary to an action for not receiving by the seller. (*Hagan* v. *King*, 38 Barb. 200.) If the buyer unreasonably refuses to accept goods which are perishable, the seller ought not to allow them to be spoiled on his hands, but they should be sold so as to hold the buyer liable for the true difference between the price brought and the price agreed upon. (*Danforth* v. *Walker*, 40 Vt. 257; *Ullman* v. *Kent*, 60 Ill. 271; Story on Sales, § 314; Schouler's Personal Property, 547.)

*E. W. Paige* for respondents. The contract was valid under the statute. (*Hunter* v. *Wetsell*, 57 N. Y. 375.) Payment by check was sufficient. (*Gould* v. *The Town of Oneonta*, 71 N. Y. 307; *Hawley* v. *Keeler*, 53 id. 114, 120, 121.) No tender of the hops was requisite. (*Muckey* v. *Howenstine*, 3 N. Y. S. C. [T. & C.] 28; *Crookshank* v. *Burrell*, 18 Johns. 58; *Higgins* v. *Murray*, 4 Hun, 565; 73 N. Y. 252; *Goddard* v. *Binney*, 115 Mass. 451.) The rule of damages was correct. (*Hayden* v. *Demets*, 53 N. Y. 426; *Bridgford* v. *Crocker*, 60 id. 627.)

FINCH, J. We are to assume as facts in this case, from the verdict of the jury, that an absolute contract for the sale of the hops, after they were weighed and baled, was entered into verbally by the parties, by the terms of which the hops were to be delivered where the defendants determined and requested, and were to be paid for within a few weeks upon such delivery, at the rate of fifty cents per pound with $10 additional on the whole lot. Since the quantity of the hops, as baled and weighed, carried the price beyond $50, we held upon a previous appeal that the contract was void within the statute of frauds, because no memorandum in writing was made, no part of the property delivered, and no portion of the purchase-money paid at the time of the transaction. The after payments of $300 we decided to be insufficient to validate the contract, because when made there was no restatement or recognition of the essential terms of the contract. (57 N. Y. 375.) In the case as now presented the difficulty, fatal before, is claimed to have been obviated. There is proof of a restatement of the essential terms of the contract at the time of the delivery of the check for $200. There is proof also contradicting such alleged fact. The question was left to the jury, under a charge from the court which does not seem to be the subject of complaint, and they, in rendering a verdict for the plaintiffs, necessarily found the fact of such restatement. That finding is conclusive upon us.

But it is now objected that, conceding the fact of such restatement, there was no payment of any part of the purchase-money at that time. It is admitted that the check was then given, and it cannot be successfully denied that it was both delivered and received as a payment upon the contract-price of the hops, but it is claimed that the check was not, in and of itself, payment, and having been drawn upon a bank, could not have been in fact paid until afterward, and so there was no payment "at the time" to satisfy the requirements of the statute. It is quite true that a check, in and of itself, is not payment, but it may become so when accepted as such and in due course actually paid. While not money, it is a thing of value, and is money's worth when drawn against an existing

deposit which remains until the check is presented. We must assume that the check of the vendee, in this case, was good when drawn and was duly paid upon presentation in the usual and regular way, for it appears in the possession of the drawers, and they practically assert the fact of its payment by their counter-claim in the action, by which they seek to recover back the money so paid. There was, therefore, an actual and real payment made by the vendees to the vendor, upon the purchase-price of the hops. It is said, however, that the actual payment of the money, as distinguished from the delivery of the check, was not "at the time" of the contract, but at some later period. We do not know accurately when the check was paid. It may have been the same day. It may have been within a very few moments. It may not have been till the next day. We are not to presume, for the purpose of making the contract invalid, that it was held beyond the natural and ordinary time. In such event it is a very narrow construction to say that the payment was not made at the time of the contract. The purpose and object of the statute should not be forgotten. Its aim is to substitute some act for mere words, to compel the verbal contract to be accompanied by some fact not likely to be mistaken, and so avoid the dangers of treacherous memory or downright perjury. The delivery of the check was such an act. Indeed, it would be an entirely reasonable and just construction to say that the delivery of the check and its presentment and payment constituted one continuous transaction, and should be taken as such without reference to the ordinary delay attendant upon turning the check into money. The statute does not mean rigorously, *eo instanti.* It does contemplate that the contract and the payment shall be at the same time, in the sense that they constitute parts of one and the same continuous transaction. We think, therefore, there was a payment "at the time," within the meaning of the statute, and that the contract of sale was valid. (*Artcher* v. *Zeh,* 5 Hill, 200 ; *Hawley* v. *Keeler,* 53 N. Y. 114; *Bissell* v. *Balcom,* 39 id. 275.)

It was further objected to the recovery that there should

have been a tender of the hops. There was an offer to deliver. The place of delivery was to be named by the purchaser. He was informed, after the hops were weighed and baled, that they were ready for delivery. The vendor stood in the attitude of readiness to perform. He had done all that he could do until the vendee named the place of delivery. We think there was a sufficient offer of performance to enable the vendor to maintain his action for the purchase-price. (Story on Sales, § 314.)

No error was committed as to the measure of damages. The jury awarded to the plaintiffs the purchase-price, less the payments received. The case was not one of a merely executory contract in which the title had not passed. The vendor stood in the position of such complete performance as entitled him to recover the contract-price as his measure of damages. That the property was perishable does not alter the situation. He was not bound to sell the hops at auction after due notice and on account of the vendee. He might have done so, but was at liberty to abandon the property, treat it as the vendee's, and sue the latter for the price. (*Pollen* v. *Le Roy*, 30 N. Y. 556.)

The evidence as to the fall in the price of hops was not erroneously admitted. (*Lefler* v. *Field*, 52 N. Y. 621.) It was drawn out upon a cross-examination of the defendant. A question of fact had arisen in the case. The defendant contradicted, as a witness, the evidence given on behalf of the plaintiff as to payment upon the hops and a restatement of the contract. The truth was to be sought by the jury from the evidence of witnesses who sharply disagreed. Both could not be right. One was certainly wrong, either innocently or willfully. To aid a discovery of the truth, it was quite proper that the jury should understand the interest of the party testifying. It is true that in this case the defendant had been called by the plaintiff as a witness to prove the single fact of the payment of the check. Then followed a motion for a nonsuit, and after that the defendant was called in his own behalf and thereafter subjected to cross-examination. The objection to the inquiry as to the fall of price was not put upon any ground

relating to the calling of the witness by plaintiff, but was merely that the proof was immaterial and irrelevant. The objection was not sound. It would not have been sound if founded upon the idea that plaintiff could not impeach his own witness. It is true that by calling him he represented him as worthy of belief, and was not at liberty to impeach his general reputation for truth or impugn his credibility by general evidence tending to show that he was unworthy of belief. That was neither the purpose nor effect of the evidence. Plaintiff was at liberty to contradict him as to the particular fact of there having been no restatement (*Thompson* v. *Blanchard*, 4 N. Y. 311), and this not only when it appeared that the witness was innocently mistaken, but even when the evidence might collaterally have the effect of showing that he was generally unworthy of belief. (*Lawrence* v. *Barker*, 5 Wend. 305; *McArthur* v. *Sears*, 21 id. 190; *Williams* v. *Sargeant*, 46 N. Y. 481.)

The interest of a perfectly credible and innocent witness may and often does color his recollection and mold and modify his statements, sometimes even insensibly to himself. The fact of such interest, where there is a contradiction in the evidence, is a proper subject for the consideration of the jury.

We discover, therefore, no error committed on the trial of this case and the judgment should be affirmed, with costs.

All concur, except DANFORTH, J., dissenting, and RAPALLO, J., absent. FOLGER, Ch. J., concurring in result.

Judgment affirmed.