**STEVENSON et al. v. RICHARDSON COUNTY, NEBRASKA.**

Civ. No. 27–49.

United States District Court
D. Nebraska, Lincoln Division.

July 7, 1949.

438

Henry F. Schepman, of Falls City, Nebraska, and John C. Mullen, of Omaha, Nebraska, for plaintiffs.

Bayard T. Clark, Frank A. Hebenstreit, and Jean B. Cain, all of Falls City, Nebraska, for defendant.

DELEHANT, District Judge.

The plaintiffs above identified, all citizens of states other than Nebraska, filed the complaint in this case on April 18, 1949, and prayed for judgment largely in excess of $3,000, exclusive of interest and costs, as damages, (a) in one count, for the death, and (b) in another count for pain and suffering sustained prior to the death, on March 21, 1949, of Elmer E. Fouraker, as the results of injuries by him suffered in consequence of the alleged negligence of the defendant in the maintenance and condition of repair of a bridge or culvert, located in Richardson County, Nebraska, with whose repair the county was charged by law. Section 39-834, R.S.Neb.1943. Jurisdiction of the subject matter of the action is not questioned.

On May 3, 1949, the defendant served a motion (a) to dismiss, and (b) to strike certain portions of the complaint. For the present, the motion to strike will not receive attention, because, upon the oral argument, it was conceded that in an amended complaint, if authority to present one were granted, certain features of the claim could and would be altered in a way either to comply with those purposes of the motion or, alternatively, to require their reassertion as against the amended complaint. So, of the defendant's pleading only the motion to dismiss will now be considered.

As originally served and filed, the motion to dismiss specified as its ground, only a misjoinder of parties plaintiff upon the theory that in a case of this character arising in Nebraska, only the plaintiff administrator is lawfully entitled to prosecute the action in either of its aspects. That legal theory is well taken. By Section 30-810, R.S.Neb.1943, it is provided with respect to an action for death of a person by wrongful act, that "it shall be brought by and in the name of his personal representatives, for the exclusive benefit of the widow or widower and next of kin." The Supreme Court of Nebraska has held that the statute vests the right of action exclusively in the personal representative rather than the ultimate beneficiaries of it. Swift v. Sarpy County, 102 Neb. 378, 167 N.W. 458; Murphy v. Willow Springs Brewing Co., 81 Neb. 219, 115 N.W. 763; Butera v. J. C. Mardis Co., 99 Neb. 815, 157 N.W. 1024. And that court, in Swift v. Sarpy County, supra, expressly decided that the limitation to the personal representative of the right of action for death by wrongful act extended to an action against a Nebraska county for the benefit of the husband of a woman killed as a result of the defective repair of a highway, and sustained the dismissal of an action brought by the husband. Somewhat later, in a suit brought in this court by reason of the death involved in Swift v. Sarpy County, supra, by the administrator of the deceased wife, the authority of the personal representative to institute the suit was vindicated. Sarpy County v. Galvin, 8 Cir., 251 F. 888. The issue is thus positively settled in respect of Count I.

Nor is the rule otherwise as to Count II in which recovery is sought for pain and suffering in the interval between the decedent's injury and his death. The right to recover for such pain and suffering was a chose in action possessed by the decedent at the time of his death. The title to the claim for such damages is personal property, which, pending the decree of final settlement and distribution passes to the personal representative of its deceased owner. Sections 30-406 and 30-803, R.S. Neb.1943; Dobney v. Chicago & N. W. R. Co., 120 Neb. 824, 235 N.W. 585; Uptegrove v. Metropolitan Life Ins. Co., 145 Neb. 51, 15 N.W.2d 220; Cox v. Yeazel, 49 Neb. 343, 68 N.W. 483; and Prusa v. Everett (opinion on rehearing) 78 Neb. 251, 113 N.W. 571, recognizing certain exceptions to the rule which have no present significance. The proceeds of recovery upon such a claim constitute one of the personal assets of the estate administrable as personal property generally, and liable for debts and the costs of administration, of which only the residue, if any, passes to the decedent's heirs or legatees, who, when debts and costs exhaust the personal property, have no actual and realizable share in the avails of the claim. There is, accordingly, even more reason why suit on such a claim should be prosecuted by the personal representative than there is for similar prosecution of a claim for death by wrongful act, which the statute, Sections 30-809 and 30-810, R.S.Neb.1943, creates, not as an administrable asset of the decedent's estate generally, but rather for the direct and exclusive "benefit of the widow or widower and next of kin." In re Lucht's Estate, 139 Neb. 139, 296 N.W. 749; In re Estate of Griffin, 89 Neb. 733, 131 N.W. 1033.

But, although the defendant's position that the individual plaintiffs have no valid standing as parties to this action is well taken, its motion to dismiss on that ground must, nevertheless, be denied. Rule 21, Federal Rules of Civil Procedure, 28 U.S. C.A., explicitly requires its denial. It declares that: "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."

The courts have applied the rule in accordance with its unmistakable language. F. X. Hooper Co. v. Samuel M. Langston Co., D.C.N.J., 56 F.Supp. 577; Uarte v. United States, D.C.Cal. 7 F.R.D. 705; Railway Employees' Dept. v. Virginian R. Co., D.C.Va., 39 F.Supp. 354; Diepen v. Fernow, D.C.Mich., 1 F.R.D. 378.

The court, therefore, denies the motion to dismiss, insofar as it is based on alleged misjoinder of plaintiffs. But, the misjoinder existing and being thus drawn to the court's attention, the order is being so prepared that all individual plaintiffs are being dropped from the case.

On May 9, 1949, immediately before the submission of oral argument upon the motion to dismiss, the defendant by leave of court added as a further ground for the motion the designation of the defendant as "Richardson County, Nebraska" in the face of the following language of Section 23-101, R.S.Neb.1943: "Each county * * * by the name and style of 'The county of ——— ,' * * * may * * * be sued", etc.

The contention is that the statutory denomination of the county as "The County of Richardson", being mandatory, nullifies the suit ostensibly against the county under the name of "Richardson County, Nebraska". And the point is the more critical in that a suit for the purpose of the present action must be "commenced within thirty days of the time of the injury or damage occurring". Section 39-834, R.S.Neb.1943. That period of time has elapsed; and if the complaint and process thereon are wholly void, the claims may not now be validly asserted through the device of amendment.

On June 1, 1949, the plaintiffs served on counsel for the defendant a motion, filed on June 3, 1949, wherein they seek an order permitting them to serve an amended complaint in which the defendant shall be designated as "The County of Richardson" and directing the marshal to amend his return already made, in such manner as

to show service of process on the original complaint on the redesignated defendant by delivery of a copy of the summons and a copy of the complaint to the Chairman of the Board of County Commissioners of the County of Richardson.

Both motions are before the court for ruling, the motion to dismiss remaining for consideration, and being pressed principally on the ground asserted by way of addition; and the plaintiffs' motion for leave to amend its complaint, being prompted by that addition to the motion.

■ The directly applicable statute of Nebraska, Section 23-101, R.S.Neb.1943, quoted in its entirety, is in the following language: "Each county, established in this state according to the laws thereof, shall be a body politic and corporate, by the name and style of 'The county of ———,' and by that name may sue and be sued, plead and shall be impleaded, defend and be defended against, in any court having jurisdiction of the subject matter, either in law or equity, or other place where justice shall be administered."

It is settled by Nebraska authority that a county is not by its nature, inevitably and apart from statutory erection, a corporate entity but is rather an instrumentality erected by the state whereby it exercises and administers its sovereign authority, and that, thus envisioned, it is not subject to suit except in the manner, within the time, and for the purposes defined by the legislature. One who claims the statutory right to institute suit against a county must, therefore, strictly observe the statute and bring himself and his action within its grant. Swaney v. Gage County, 64 Neb. 627, 90 N.W. 542; Hollingsworth v. Saunders County, 36 Neb. 141, 54 N.W. 79; Wehn v. Gage County Commissioners, 5 Neb. 494; 25 Am.Rep. 497; Woods v. Colfax County, 10 Neb. 552, 7 N.W. 269. See also Madden v. Lancaster County, 8 Cir., 65 F. 188, in which the Wehn and Woods cases were contrasted with the Hollingsworth case. In the earlier cases liability of a county was denied for want of legislation supporting it. In the Hollingsworth case the county was held liable under an inter-

vening statute allowing suits for the same type of injury that was involved in the Woods case (and is involved in this one); and the court sustained as valid the sharp restriction by the statute of the time within which suit upon such a claim must be brought. (vide supra)

But, although the requirement of strict observance of the prescriptions imposed upon the exercise of the statutorily granted right to sue the governmental subdivision is established by the Nebraska authorities, it is not contended, nor is the court able to find, that the Nebraska court has ever expressed its opinion whether a disparity in names, as applied to the county corporation, essentially similar to that which exists in this case and has already been noted, utterly avoids an action in the plight of this suit. Construing a statute relating to suits against townships, in counties under township organization, Section 23-262, in association with section 23-219, R.S.Neb.1943, which is indistinguishable from Section 23-101, supra, the Supreme Court of Nebraska, in Town of Denver v. Myers, 63 Neb. 107, 88 N.W. 191, 192, said: "Section 17 of Article 4 of the chapter mentioned", i. e. Section 23-219, R.S.Neb.1943, "provides what the corporate name of a town shall be, and that all actions by or against the town shall be in its corporate name. Section 62", i. e. Section 23-262, R.S.Neb.1943, "provides for the bringing of suits in its corporate name, either at law or in equity."

But that language, merely paraphrased the cited sections; was written in a case in which the town had sued as plaintiff by its exact statutory name and where the question involved was its right to sue at all upon the claim in issue; and has no reference to disparity in names where, as here, an attempt has been made to sue the proper entity, though under a familiar name, not however identical with that prescribed in Section 23-101, R.S.Neb.1943.

■ In default, therefore, of controlling Nebraska authority upon the point, a federal district court must endeavor to estimate Nebraska's position by a survey of the decisions arising elsewhere, of more or less instructive significance, in proper re-

lation to collateral Nebraska material of either legislative or judicial origin. (Parenthetically, it appears, Mattson v. Central Electric & Gas Co., 8 Cir., 174 F.2d 215 that a district judge who, however obviously, embarks on such an inquiry must declare his mission, lest he be mistakenly adjudged guilty of infidelity to Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.) On this occasion, the paucity of directly pertinent reported opinions from other jurisdictions, and the manifest distinguishability of many of the authorities cited by counsel containing somewhat instructive language, conspire to prevent the arrival at any infallible conclusion. The already noted necessity of strict observance of the applicable statutes in suing a county does, indeed, emerge from one's study of the cases; but its application is not invariably significant.

Under an Illinois statute then in force, later repealed, relating to counties under township organization, by which it was required that actions by or against a county in its corporate capacity be in the name of the board of supervisors of such county, it was held in County of Rock Island v. Steele, 31 Ill. 543, that a suit against "The County of Rock Island" was invalidly brought. See also Schuyler County v. Mercer Co., 4 Gilman 20, 9 Ill. 20. In Saline Branch Drainage District v. Urbana-Champaign Sanitary District, 395 Ill. 26, 69 N.E.2d 251, 253, 167 A.L.R. 1210, it was held that the designation of the corporate sanitary district as "U & C Sanitary Dist" was fatally inadequate, but no statute comparable to the one now involved contributed to the decision. In County of Clay v. Curtright, 251 Ill.App. 371, the court held that judgment made and given in a suit against "Clay County", which the statute required to be brought

against it in its corporate name of "The County of Clay", was so far void that it could not be corrected by amendment after the term of entry.[1]

The Colorado court of appeals, construing in Board of County Commissioners of the County of Phillips v. Churning, 4 Col.App. 321, 35 P. 918, a statute providing that a county shall be sued in the name of "the board of county commissioners of the county of ———", Gen.St.Colo. 1883, § 525, held absolutely void a petition and process and judgment against "Phillips County, Colorado" and also dismissed a petition in error by "Board of County Commissioners of the County of Phillips" to review the judgment. The ruling was based upon the premise that the corporate board was not a party to the suit and there was nothing from which it could appeal. That ruling was followed long thereafter, and in 1935, by a majority of the Supreme Court of Colorado in a very brief and dubiously considered opinion, affirming a judgment dismissing as invalidly brought, a suit designating "The County of Phillips, State of Colorado" as the defendant. John Deere Plow Co. v. County of Phillips, State of Colorado, 97 Colo. 196, 48 P.2d 793. See comment, infra, regarding dissenting opinion in the cited case.

In Muskogee County, Oklahoma v. Lanning & McRoberts, 51 Okl. 343, 151 P. 1054, 1055, the Supreme Court of Oklahoma rejected as invalid an appeal in the name of "Muskogee County, Oklahoma" from a judgment in a suit in which it was so designated, because under the statute of the state, it could sue and be sued only as "Board of County Commissioners of the County of ———". 19 O.S. 1941 § 4. That opinion was followed in Cleveland County v. Johnson, 59 Okl. 77, 157 P. 1035, in which an appeal by "Cleveland County" was dismissed as presenting no

1. The writer considers Winnebago County v. Industrial Commission, 336 Ill. 466, 168 N.E. 273 to be consistent with the other Illinois cases mentioned above. While it recognizes that "where real party in interest and one intended to be sued is actually served with process, even though under wrong name, if such party does not take advantage of misnomer by plea in abatement, he will be concluded by judgment or decree rendered the same as if he were described by his true name", the ruling actually applies the cited Illinois cases and holds invalid as a suit against a county, a proceeding in which its board of supervisors was designated as the defendant.

demand by a party competent to sue. See also Green Construction Co. v. Oklahoma County, 174 Okl. 290, 50 P.2d 625.

In Georgia the state constitution required suits by or against a county to be "in the name thereof". Const.Ga. art. 11, § 1, par. 1. It was held in Commissioners of Roads and Revenue v. Howard, 59 Ga. App. 451, 1 S.E.2d 222, that a petition in an action against "Commissioners of Roads and Revenue of Houston County" was demurrable for the failure to proceed against the county "in the name thereof". See also Arnett v. Board of Commissioners, 75 Ga. 782.

In Board of Commissioners of Sweetwater County v. Young 3 Wyo. 684, 29 P. 1002, the Wyoming Supreme Court held that the statutory designation of "the board of the county commissioners of the County of ———", Rev.St.Wyo. 1887, § 1795, as the name in which suits by or against a county should be prosecuted, was the exclusive method for such prosecution, whether the quoted designation was a real corporate name or not. However, the discussion in the case was quite irrelevant because the manner of designating the plaintiff conformed strictly to the statutory language.

One may put aside as irrelevant to this controversy, the many cases which properly hold that where a statute provides the conditions in which an enforceable claim will arise against a county, its requirements must be strictly construed. The rule of strict construction is valid in respect both of the accrual of a litigable claim and of the manner of its prosecution. The question is whether in its present application it is to be carried to the extremity demanded by the moving party.

Before proceeding to the recollection of some of the cases that argue for a less literal application of the rule requiring strict observance of the statute, two other sections of the Revised Statutes of Nebraska for 1943 should be mentioned. They follow.

"25-852. Amendments in furtherance of justice. The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, by adding or striking out the name of any party or by correcting a mistake in the name of the party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. Whenever any proceeding taken by a party fails to conform, in any respect, to the provisions of this code, the court may permit the same to be made conformable thereto by amendment."

"25-853. Errors not affecting substantial right; to be disregarded. The court in every stage of an action must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

Those sections, whose comprehensive sweep will be observed, are cited, not upon the invalid supposition that either of them controls the procedure in this court respecting the subject of amendments,[2] but rather for their reflection of

---

2. Amendments here are directly governed by the following essentially similar language of Rule 15(a) and (c):

"(a) A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."

"(c) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or oc-

the broadly liberal policy of the state of Nebraska in the matter of flexibility in judicial procedure. They have consistently been regarded as indicative of such a policy. Comparable local statutes of the several states concerned have not generally been considered or given effect in the cases already cited illustrating the strict pursuit of legislation authorizing suits against counties, although there are exceptions to that observation.

No space or time will be devoted to the citation and discussion of Nebraska cases allowing amendments by the substitution of correct individual names; of the names of individual owners for mere fanciful trade names; and of the appropriate corporate names of parties originally designated in a variety of erroneous ways. Those cases are instructive on this occasion only for their demonstration of the determination that the cited sections 25-852 and 25-853 shall be administered ungrudgingly in and by Nebraska's state courts in the interest of the achievement of substantial justice.

Touching Section 25-853, supra, the Supreme Court of Nebraska in Scottsbluff National Bank v. Pfeifer, 120 Neb. 445, 233 N.W. 255, 256, said: "It must be remembered that this state has reached a stage in its jurisprudence when mere technicalities are not ordinarily permitted to create a condition which would deny to a litigant a speedy and efficient determination of justiciable facts. The legislature must have had this thought in mind when it enacted Section 8657, Comp.St.1922". (Now Section 25-853.)

See also Swan v. Bowker, 135 Neb. 405, 281 N.W. 891; Weekes Grain & Livestock Co. v. Ware & Leland, 99 Neb. 126, 155 N.W. 233. And the Circuit Court of Appeals for the eighth judicial circuit in McDonald v. State of Nebraska, 8 Cir., 101 F. 171, as will be made more apparent later, emphasized the two sections in its appraisal of the constructively liberal position of the state in the matter of pleading and procedure.

Dealing, not with the manner of suit, but with the style for the submission of a claim against a Nebraska county, the Nebraska court, in State ex rel. Seth Thomas Clock Co. v. Board of County Commissioners of Cass County 60 Neb. 566, 83 N.W. 733, 735, said: "It is next urged that the relator is not entitled to the relief prayed for, because—first, no claim against the county has ever been presented. * * * While the claim presented recites the names of the commissioners, and describes them as commissioners of Cass county, it shows upon its face that it is a claim in favor of relator for putting up, complete, a tower clock, with attachments, in the court house, as per agreement. It is apparent from an examination of the bill, and especially in connection with the contract referred to, that it is a claim against the county, and describes the commissioners in their official capacity, and as the representatives of the county. At most, it was only an irregularity which might have been taken advantage of in connection with its approval, which in no way affects the jurisdiction of the commissioners or their authority to act."

The plaintiff relies in substantial measure upon McDonald v. State of Nebraska, supra [101 F. 174]. That opinion was delivered by the Circuit Court of Appeals, eighth circuit, in the course of its affirmance of a judgment of the then circuit court for this district. The State Treasurer of Nebraska, acting in his official capacity, had brought an action against the receiver of a national banking association to recover moneys of the state on deposit in the bank when it was closed. Demurrer to his petition was sustained on the ground that the treasurer had no capacity to sue and the action should have been brought by the state. And thereupon, by leave granted by the trial court, the state was substituted for the treasurer as plaintiff and amendment of the petition was made accordingly, and this despite the fact that the period prescribed in the applicable statute of limitations had

currence set forth or attempted to be set forth in the original pleading, the

amendment relates back to the date of the original pleading."

theretofore elapsed. The reasoning of the court, so obviously instructive here, is quoted partially, though at substantial length, in a footnote.[3] Following the quot-

8. "Other contentions of the plaintiff in error are that the substitution of the state of Nebraska as plaintiff in the action was a change of the cause of action, and was equivalent to the bringing of a new action, and that, as the statute of limitations had run against the plaintiff's claim before the substitution was made, the cause of action is barred. It is not now material to inquire whether the suit was not properly brought, in the first instance, in the name of the treasurer of the state. The receiver insisted that the treasurer of state, in his official capacity, was not, and the state was, the proper party to maintain the suit on the cause of action set out in the petition. Having assumed that position, and succeeded in maintaining it, he cannot now assume a contrary position.

"The state of Nebraska early adopted the reformed system of pleadings, and there is probably no state in the Union whose courts have given to that system a more liberal and enlightened interpretation, or one more in harmony with its obvious, and, we may say, expressed, purpose and intent. The Code of that state abolishes all common-law forms of actions, and, in common with the Codes of many other states, contains these provisions:

" 'Sec. 144. The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding, by adding or striking out the name of any party, or by correcting any mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. And whenever any proceeding taken by a party fails to conform, in any respect to the provisions of this Code, the court may permit the same to be made conformable thereto, by amendment.

" 'Sec. 145. The court in every stage of an action, must disregard any error or defect in the pleadings or proceedings, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.'

"Beyond all question these provisions authorized the court to allow the amendment that was made in this case. Not only so, but when the court ruled that the action should be prosecuted in the name of the state of Nebraska it was its duty to allow the amendment substituting the state as the plaintiff in the action. Section 145 is mandatory. It declares the court 'must disregard any error, or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party.' Under the Code in Nebraska there is no such thing as a vested right in a technical error or defect in the pleadings or the parties to the action. No error or defect can be regarded which does not affect the substantial rights of the adverse party. Whether the judicial demand upon the bank and its receiver to repay to the state the money of the state which the bank had received and retained should be made in the name of the state or in the name of the treasurer of the state in his official capacity was purely a technical legal question, which in no wise related to the merits of the cause of action. The cause of action was not changed in the slightest degree by substituting the state of Nebraska as plaintiff in place of the treasurer of state. The cause of action declared on was the same in the original and amended petitions. The petition of the treasurer of state sought to recover of the bank and its receiver, for the state, the money of the state which had been deposited in the bank, and which the bank had never returned to the state. When the name of the state was substituted for that of her treasurer, precisely the same cause of action was counted on, and the same relief asked. The amendment merely substituted the name of the state, who was the real party in interest, for that of her fiscal agent. In the receipt and disbursement of the public funds the state can only act by and through her officers and agents. The money, if any, recovered in this action, must be received and receipted for and deposited in the state treasury by the proper fiscal agent of the state, who is undoubtedly the state treasurer; and the receipt of the treasurer of state to the bank or its receiver for the money sued for in this action would be a good quietus for the same.

"Outside of the usual and necessary formal parts of the petition, there were but two averments essential to constitute a statement of a good cause of action in this case: One, that the state,

by and through her treasurer, had deposited in the bank the money of the state to the amount of $236,361.83; and the other that the bank and its receiver retained the money, and refused to repay it; and, in substance, this is what is stated in the original and amended petition. The receiver's objection, which resulted in substituting the name of the state as the plaintiff in the action, was not that the state was the proper party to maintain a suit on some other cause of action than that declared on in the petition of the state treasurer, but it was that the state was the proper party plaintiff in that suit, and for the very cause of action declared on in the petition of the treasurer of state. It is obvious, therefore, that the substitution of the state as the plaintiff in the action worked no change whatever in the cause of action.

"The views we have expressed are in harmony with the decisions of the supreme court of Nebraska. In an early case in that state (Martin v. Coppock, 4 Neb. 173) the supreme court held that the summons might be amended after service thereof on defendant by changing the plaintiff's name from Isaac Coppock to Isaiah Coppock. The court, speaking by Judge Maxwell, said: 'The mistake in the name of Coppock could not have misled Martin, but when the amendment to the summons was made it related back to the time of service;' and the court characterized the defense in the case as 'purely technical.' In Reed v. Beardsley, 6 Neb. 493, the action was brought against three persons as partners, and, when the proof disclosed that the cause of action was against one of the defendants individually, and not against the firm, the court permitted the plaintiff to amend his petition by striking out the name of the firm and the other defendants, and the supreme court said, 'This amendment was clearly within the discretion of the court, and was properly allowed,' and, after quoting section 144 of the Code of Civil Procedure, the court declared, 'A discretion of wider range could hardly be given to the court.' In Herron v. Cole Bros., 25 Neb. 692, 41 N.W. 765, the action was brought in the name of 'Cole Brothers' as plaintiffs, and the court permitted the petition to be amended so as to make 'Cole Brothers, a corporation duly organized and existing under the laws of the state of Iowa,' the plaintiff in the action, thus changing the plaintiff from a natural to an artificial person. In McKeighan v. Hopkins, 19 Neb. 33, 26 N.W. 614, an action of ejectment was, by amendment of the petition, changed into a bill to redeem. The court, speaking by Judge Maxwell, said:

"'The Code abolished the distinction between actions at law and suits in equity. If, therefore, an action at law is brought to recover a tract of land, the court certainly has the power to permit the plaintiff to amend his petition, so that he may recover the same either at law or in equity. The right to be enforced is the same in either case,—the recovery of the land,—and, so long as the identity of the cause of action is preserved, the petition may be amended by stating such facts as the plaintiff may believe to exist in his favor to entitle him to the relief sought. The restriction in the section above quoted does not refer to the form of the remedy, but the identity of the transaction.'

"And in answer to the same contention that is made by the receiver in this case, namely, that the amendment must be treated as the beginning of a new suit, and that, so treating it, the cause of action was barred by the statute of limitations before the amendment was allowed, the court said:

"'The appellee claims, however, that, even if it is conceded that the court had authority to authorize the amendment in question, still the statute of limitations would run against the cause of action until the amended petition was filed. In Martin v. Coppock, 4 Neb. 173, it was held that the amendment of a mistake in the name of the plaintiff related back to the date of the service, and this, we think, is the general rule. The cause of action is the same although the relief is sought in a different manner from that in the first petition. This, however, does not change the cause of action, and the statute of limitations ceased to run when the summons which was served on him was issued, or, if the service was constructive, at the date of the first publication of the notice.'

"But, independent of the Nebraska Code and the decisions of the supreme court of that state, we would have no difficulty in upholding the judgment of the lower court in this case both upon principle and authority. The right and duty of the federal courts to allow amendments does not rest on state statutes only. It is conferred on them by the judiciary act of 1789. That act was framed by the great statesmen and lawyers who had actively participated in the struggle to establish the political independence of their country. When this object had been achieved, and the constitution adopted, they framed an

ed language, the writer of the principal opinion vindicated the action of the trial court by an exhaustive analysis of authorities in the federal courts and from other state sources. It is true that in a special concurring opinion Judge Sanborn also supported the judgment under review on the ground that the treasurer's suit in his own official name was warranted by statute. But that view does not invalidate the significance of the reasoning in the chief opinion in the case, supra.

■ Instructive also, and from the highest source is Commissioners v. Bank of Commerce, 97 U.S. 374, 24 L.Ed. 1060. The setting of, and ruling in, that case could hardly be better reflected than by copying its syllabus, which follows: "In an action on certain coupons originally attached to bonds issued by the county of Pickens, South Carolina, the holder of them made as sole defendants to his complaint certain persons whom he named "as county commissioners" of said county. No objection was taken to the pleadings, nor any misnomer suggested. Verdict and judgment for the plaintiff. Held, 1. That neither the Constitution nor the statutes of that State declare the name by which a county shall be sued. 2. That, if the action should have been brought against the county by its corporate name, the misdescription, if objected to, was, by the statutes of that State, amendable at the trial; but it furnishes no ground for reversing the judgment."

It is quite true, as the defendant, on this occasion, argues, that in the last cited case the court held that the statutes of South Carolina did not contain any imperative

prescription of the name by which a county should be sued. But that was not the sole considered ground of decision. For the court also said:

"But if it be conceded that this action should have been brought against the county of Pickens by the corporate name of the county of Pickens, the error is simply one of misdescription of the parties defendant, a misnomer amendable at the trial if objected to, and to be disregarded, both at the trial and on appeal, when such objection is not taken.

"The Revised Statutes of South Carolina provide (sec. 199) that 'the court shall in every stage of the action disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party, and no judgment shall be reversed by reason of such error or defect.'

"By another section (196) it is provided that 'the court may, before or after judgment, in furtherance of justice and on such terms as may be proper, amend any pleading, process, or proceeding, by adding or striking out the name of any party, or by correcting a mistake in the name of a party or a mistake in any other respect, or by inserting other allegations material to the case, or when the amendment does not change substantially the claim or defence, by conforming the pleadings or proceedings to the facts proved'."

If it be suggested that the quoted reasoning is dictum, it may be answered that the considered reasoning of a court of final resort upon a proposition before it, though not necessary to the decision arrived at, is not, and has never rightly been

act for the organization and government of the national courts, which has remained for more than a century a monument to their great wisdom, foresight, and sense of justice. The thirty-second section of that act was designed to free the administration of justice in the federal courts from all subtle, artificial, and technical rules and modes of proceeding in any way calculated to hinder and delay the determination of causes in those courts upon their very merits. This act emancipated the judicial depart-

ment of the government from the shackles of artificial and technical rules, which had theretofore been interposed to obstruct the administration of justice, as completely as the Revolution had emancipated the political department of the government from foreign domination. This was done by investing the federal courts with plenary power to remove by amendment all such impediments to the attainment of justice. From the first, the supreme court of the United States grasped the object and purpose of this enactment."

considered to be, mere obiter dictum but is respectfully to be regarded by the judges of the inferior courts in arriving at their conclusions upon problems to which it is pertinent. Jacksonville P. & M. R. Co. v. Schutte, 103 U.S. 118, 26 L.Ed. 327; Union Pac. R. Co. v. Mason City & F. D. R. Co., 199 U.S. 160, 26 S.Ct. 19, 50 L.Ed. 134; Watson v. St. Louis, I. M. & S. R. Co., C.C., 169 F. 942, affirmed, St. Louis, I. M. & S. R. Co. v. Watson, 223 U.S. 745, 32 S.Ct. 533, 56 L.Ed. 639; Brown v. Chicago & N. W. R. Co., 102 Wis. 137, 77 N.W. 748, 78 N.W. 771, 44 L.R.A. 579; Scovill Mfg. Co. v. Cassidy, 275 Ill. 462, 114 N.E. 181, Ann.Cas.1918E, 602; Spitzley v. Garrison, 208 Mich. 50, 175 N.W. 390; State v. Loveless, 62 Nev. 312, 150 P.2d 1015.

Several opinions from the courts of states other than Nebraska argue for liberality in the allowance of amendment in the present circumstances, even where the defect to be reached involves the inaccurate designation of a county as a party to litigation. Such authority is not entirely wanting even in Colorado on whose decisions the defendant substantially relies.

In Del Monte Live Stock Co. v. Ryan, 24 Colo.App. 340, 133 P. 1048, 1051, the Colorado Supreme Court held that, in default of seasonable challenge by demurrer or answer, a petition against three designated men "constituting and being the board of county commissioners of the county of Chaffee in the state of Colorado", after trial and judgment and upon appeal, was adequate to support the judgment despite the requirement of the Colorado statute that the proper title for suits against a county was "The board of county commissioners of the county of ———". Mills' Ann.St.1891, § 778. The Colorado court thus summarized its ruling on the point: "In this case no defect of parties has been raised by answer or demurrer, or at all, except by suggestion in brief of counsel in the Supreme Court, which is wholly insufficient; though defects do oc-

cur which should have been corrected if properly raised." (Emphasis added.)

And in a dissenting opinion in John Deere Plow Co. v. County of Phillips, supra[4], two of the justices exhaustively examined the historical grounds of the summarily declared majority view in that case, supra, and quite persuasively argued that it was inconsistent with the modern trend away from procedural rigidity.

The Supreme Court of Mississippi, in National Surety Co. v. Board of Supervisors of Holmes County, 120 Miss. 706, 83 So. 8, receding from a position previously taken, vide, 120 Miss. 565, 81 So. 792, held that the designation of the plaintiff in an action as the board of supervisors of a named county, notwithstanding a requirement that such suits be instituted in the name of the county, was a mere misnomer, and, therefore, subject to correction.

Bauer v. Mitchell, 247 Mass. 522, 142 N.E. 815 held that where a suit had been instituted and partially tried against the county commissioners of a county, whereas the county should have been designated as the defendant, bringing in the county was a formal matter to be achieved through amendment.

In Fountain v. Board of Commissioners of Pitt County, 171 N.C. 113, 87 S.E. 990, 991, the pertinent portion of the ruling is fairly reflected in the third paragraph of the syllabus, which follows: "Where a plaintiff in contravention of Revisal 1905, § 1310, providing that a county must be sued in its own name, sued the board of commissioners for services, instead of the county, but the complaint stated no cause of action against the board, doing so against the county, the action was, in effect, against the county from the beginning."

Union Pacific R. Co. v. Board of Commissioners of Saline County, 69 Kan. 278, 76 P. 865 was an action against certain individuals designated as the commissioners of a county in Kansas where suit against the county was required to proceed against its board of county commissioners as an

---

4. The court, aware of the hazard that attends the following of dissenting opinions, refers to this study only for the critical analysis which it contains.

entity. After answer and trial without raising the question of the designation of the defendant, it was held that the disparity in names could not be raised, and *"that the county was a party to the action, and is bound by the judgment rendered."* (Emphasis added.)

Certain federal court opinions involving amendments generally, though arising beyond the eighth circuit, may be observed very briefly. In Hernan v. American Bridge Co., 6 Cir., 167 F. 930, an action was sustained as validly brought against a New Jersey corporation, operating in the state of Ohio and having therein a common agent for process with a New York corporation of identical name, in which the body of the petition, though referring to the defendant as a New York corporation, set out a claim based upon the business operations of the New Jersey corporation, and the process, not itself indicating the state of incorporation of the defendant, was delivered to the common agent of both corporations. And the circuit court of appeals reversed the case, in part because the trial court had declined to allow amendment of the petition in such manner as to correct the averment of the state of the corporate domicile, not in the exercise of its discretion to grant or disallow amendment but in the belief that it was without power to allow such amendment. The question of the intervention after suit of the bar of limitations was involved; but the appellate court considered that the suit was from the first against the correct party, in respect of which there was only a misnomer, curable by amendment. In Godfrey v. Eastern Gas & Fuel Associates, D.C.Mass., 71 F. Supp. 175, a plaintiff who had designated as defendant a steamship company, described as a Massachusetts corporation, whereas the former corporation of that name was organized in Delaware, and before suit had transferred all of its assets to its sole stockholder, a Massachusetts trust, was allowed, after the intervening expiration of the statute of limitations, to amend his complaint so as correctly to designate the trust as the defendant. And that amendment was held to institute no new suit, but to relate back to the filing of the initial complaint. In the recent case of Hartford Accident & Indemnity Co., to Use of Silva v. Interstate Equipment Corporation, D.C.N.J., 81 F.Supp. 357, a considered ruling was made which is fairly reflected in the following syllabus which is couched in a single paragraph: "Where New Jersey and New York corporations of same name shared same offices, and plaintiff erroneously named New Jersey corporation as defendant in action arising from activities of New York corporation and served officers of New York corporation as officers of New Jersey corporation, and owner of corporations caused New Jersey corporation to file a short, general denial with countercharges of contributory negligence, without advising plaintiff of its error, plaintiff was entitled to amend to describe defendant as New York corporation after running of statute of limitations. Federal Rules of Civil Procedure, rule 9(c), 28 U.S.C.A."

The foregoing references to some of the authorities relevant to the pending problem make no pretense of adequacy or exhaustiveness, which could not be reflected within the limits proper to the announcement of the present ruling. They may serve, however, at least to suggest the variety of opinion which is to be found upon the subject presented by the motion; and to indicate the probable course of Nebraska's court regarding it. The writer of this memorandum is satisfied that the course would concur with the thought of those decisions which rest the less heavily upon mere verbal exactitude. It reflects the more modern thought in pleading and procedure; and it more nearly conforms to Nebraska's resolution to seek for substance rather than form in litigation.

■ This court's view is that the present suit, as originally instituted, was, and still is, an action against a single entity, and that the incorporated county. In the complaint, the defendant is described as a "political subdivision of the state of Nebraska * * * a citizen and resident of the state of Nebraska"; and it is charged with legal responsibility for the supervision and repair of bridges and

culverts upon the course of the highways within its territorial boundaries, including the one involved in the case, and with knowing negligence in the discharge of that responsibility resulting in the decedent's injury and death. The summons was served upon the chairman of the Board of County Commissioners, whose capacity to receive such process in a suit against the County of Richardson is not challenged. By way of repetition, the challenge comes to this, that it contends the case must wholly fail because the defendant is designated as "Richardson County, Nebraska", instead of as "The County of Richardson". It is not believed that Nebraska's Supreme Court would proceed to that extremity. The state's consistent policy, and the course of judicial thinking in jurisdictions with a comparable outlook upon the conflicting claims of rigidity and liberality in procedure forbid the supposition. In this conclusion no argument is tendered for the patent disregard of statutory standards which characterize the complaint. It may be understood, even tolerated, but not excused.

The court has been impressed, but not persuaded, by the plaintiffs' collection of much material and historical data in support of the thesis that "Richardson County, Nebraska" is the commonly accepted designation of the entity which they have undertaken to sue; and that it has frequently heretofore sued and, without challenge, been sued in that name.[5] The convenient and common employment of "Richardson County, Nebraska" is generally understood, and need not be established by examples. But while it may explain, it does not eliminate the misnomer which has occurred. If the error were considered fatal, it would not be obviated by the vulgar employment of the common, though not statutory name, or by its toleration in litigation on former occasions, or even by the defendant's own addiction in other cases to the vice it now asks the court to join with it in condemning.

It need not be argued that, if the discrepancy in names renders the present suit a complete nullity, amendment now, more than thirty days after the injury, may not be allowed to save it. The device of amendment cannot introduce vitality into a still born lawsuit. But this case, though infirm, was not dead, on its filing. Only one party has been assailed by the plaintiffs as a defendant, and that is the incorporated county. Its chief officer was properly handed a copy of the process in the case. Its mistaken designation has seasonably been challenged; but amendment to remedy the misnomer being sought, it should be allowed (with the exception and restriction noted), and, once it is made, the motion for dismissal on account of the designation of the defendant should be denied.

Due notice has been taken of the emphasis, in certain of the reported opinions sustaining the validity of judgments entered against counties in suits in which they have been erroneously designated, placed upon the failure of the corporate county to make timely objection by demurrer, plea in abatement, or otherwise. And it is recognized that the present "defendant" has challenged the manner of its designation in its motion to dismiss. But the point of those decisions is that the mistake thus required to be challenged is not fatal to jurisdiction. Unchallenged, it will not nullify the judgment thereafter rendered in the case. Challenged, it may be remedied by amendment and will not necessitate dismissal unless amendment is not sought or, being allowed, is not actually made. And that is the nature of the ruling which the court is now announcing

An order is being entered accordingly. But the order allowing amendment will not extend to all of the designated plaintiffs. The individual plaintiffs having been dropped, only the administrator is allowed to amend and to prosecute the action hereafter. Moreover, as the original complaint contains considerable material which the

---

5. See discussion of the significance of different names as applied to counties, in the Wyoming case of Board of Commissioners of Sweetwater County v. Young, supra.

defendants contend is vulnerable to proper motion, enlarged time is being provided in the order within which the defendant may answer or plead.